NAPOLI BERN RIPKA SHKOLNIK, LLP
By:     Vincent Gonzalez, Esquire
350 Fifth Avenue, Suite 7413
New York, New York 10118
Phone: (212) 267-3700
Attorneys for Plaintiffs
Barbara Schwartz, as Executor of the Estate of
Jay B. Schwartz, and Barbara Schwartz, Individually

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

BARBARA SCHWARTZ, as Executor of     :
the Estate of JAY B. SCHWARTZ, and     :
BARBARA SCHWARTZ, Individually,     :
                                                          :
                    Plaintiffs,                        :
                                                          :
            v.                                           :     CIVIL ACTION
                                                          :
DAVID KUO, M.D., STEVEN            :     NO.: 13-5227 (JLL)
GOSHLER, M.D., AARON CHEVINSKY,  :
M.D., DARREN BLUMBERG, M.D.,       :     **COMPLAINT & JURY DEMAND**
IAN ATLAS, M.D., AHS HOSPITAL      :
CORP./MORRISTOWN MEDICAL          :
CENTER, ALLIED SURGICAL GROUP,   :
and GARDEN STATE UROLOGY,          :
                                                          :

---

Plaintiffs Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, and Barbara

Schwartz, Individually, by their attorneys, NAPOLI BERN RIPKA SHKOLNIK, LLP, by way

of a Complaint against the Defendants, say:

## I.     JURISDICTION

1.     Plaintiffs Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, and

Barbara Schwartz, Individually, are citizens of the State of New York residing at 358 Altessar

Boulevard, Melville, New York 11747.

2.      Defendant David Kuo, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 100 Madison Avenue, Morristown, New Jersey 07960.

3.      Defendant Aaron Chevinsky, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 261 James Street, Suite 2G, Morristown, New Jersey 07960.

4.      Defendant Darren Blumberg, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 65 Ridgedale Avenue, Cedar Knolls, New Jersey 07927.

5.      Defendant Ian Atlas, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 261 James Street, Suite 3A & 3D, Morristown, New Jersey 07960.

6.      Defendant AHS Hospital Corp./Morristown Medical Center is a corporation organized and existing under the laws of the State of New Jersey, having an office and principle business at 100 Madison Avenue, Morristown, New Jersey 07960.

7.      Defendant Allied Surgical Group is a corporation organized and existing under the laws of the State of New Jersey, having an office and principle business at 261 James Street, Suite 2G, Morristown, New Jersey 07960.

8.      Defendant Garden State Urology is a corporation organized and existing under the laws of the State of New Jersey, having an office and principle business at 261 James Street, Suite 3A & 3D, Morristown, New Jersey 07960.

9.      On January 3, 2013, Plaintiffs filed a Summons and Verified Complaint with the County Clerk of the Supreme Court of the State of New York, County of New York, captioned

2

*Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, and Barbara Schwartz, Individually, v. Steven A. Kaplan, M.D., David Kuo, M.D., Steven Gohsler, M.D., Aaron Chevinsky, M.D., Darren Blumberg, M.D., Ian Atlas, M.D., H. Leon Pachter, M.D., Brady Urologic Health Center, New York Presbyterian Hospital, Morristown Memorial Hospital, Allied Surgical Group, Garden State Urology, NYU Langone Medical Center and School of Medicine*, Index Number 805004/2013.

10.     On or about February 25, 2013 counsel for named defendant Darren Blumberg, M.D. moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction and for improper service.

11.     On or about March 1, 2013 counsel for named defendants AHS Hospital Corp., sued thereunder as Morristown Medical Center, and David Kuo, M.D. moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction and for improper service.

12.     On or about March 21, 2013 counsel for named defendants Ian Atlas, M.D. and Garden State Urology moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction and for improper service.

13.     On or about April 9, 2013 counsel for named defendant Aaron Chevinsky, M.D. moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction.

14.     On or about July 24, 2013 the Honorable Joan B. Lobis of the Supreme Court of the State of New York, County of New York granted the moving defendants' motions to dismiss Plaintiffs' complaint without prejudice.

15.     The matter in controversy exceeds the sum of SEVENTY FIVE THOUSAND and NO/100 ($75,000.00) DOLLARS, exclusive of interest and costs.

16.     This Court has jurisdiction over the subject matter of the within controversy by reason of diversity of citizenship of the parties and the amount in controversy, pursuant to 28 U.S.C. § 1332.

## II.     VENUE

17.     Venue is proper in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391(a) as it is the district where the cause of action arose, where the defendants are located, and where all the named defendants are subject to personal jurisdiction.

## III.     PARTIES

18.     On or about June 12, 2012, prior to the commencement of this action, plaintiff Barbara Schwartz was granted Letters Testamentary by the Surrogate's Court of the County of Suffolk, State of New York, as to the Estate of deceased, Jay B. Schwartz, and continues to act under such appointment.

19.     Plaintiff Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, is suing on behalf of the estate of Jay B. Schwartz for medical malpractice and wrongful death.

20.     Plaintiff Barbara Schwartz, an individual, is suing on her own behalf for loss of consortium resulting from the alleged medical malpractice and wrongful death of decedent Jay B. Schwartz.

4

21. Defendant David Kuo, M.D. (hereinafter, "Dr. Kuo"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including plaintiff's decent Jay B. Schwartz (hereinafter, "Mr. Schwartz"). Dr. Kuo rendered internal medical care to Mr. Schwartz as a treating internist at all times relevant herein.

22. Defendant Aaron Chevinsky, M.D. (hereinafter, "Dr. Chevinsky"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including Mr. Schwartz. Dr. Chevinsky rendered general surgical and/or surgical oncological care to Mr. Schwartz as a treating general surgeon and/or surgical oncologist at all times relevant herein.

23. Defendant Darren Blumberg, M.D. (hereinafter, "Dr. Blumberg"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including Mr. Schwartz. Dr. Blumberg rendered internal medical and gastroenterological care to Mr. Schwartz as a treating internist and gastroenterologist at all times relevant herein.

24. Defendant Ian Atlas, M.D. (hereinafter, "Dr. Atlas"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including Mr. Schwartz. Dr. Atlas rendered urological care to Mr. Schwartz as a treating urologist at all times relevant herein.

25. Defendant AHS Hospital Corp./Morristown Medical Center (hereinafter, "AHS Hospital"), was and is a professional corporation, partnership or other entity duly organized and existing under the laws of the State of New Jersey, held itself out to the public and more particularly Mr. Schwatz as utilizing and employing medical personnel possessing and using the

5

proper degree of learning and skill and who would undertake to use reasonable care and diligence in the treatment of the public and more particularly Mr. Schwartz, and was otherwise involved in and responsible for the actions of its employees, physicians and staff, as well as the management, control and policy making decisions that directly or indirectly affected the care that Mr. Schwartz received.

26.     Defendant Allied Surgical Group was and is a professional corporation, partnership or other entity duly organized and existing under the laws of the State of New Jersey, held itself out to the public and more particularly Mr. Schwatz as utilizing and employing medical personnel possessing and using the proper degree of learning and skill and who would undertake to use reasonable care and diligence in the treatment of the public and more particularly Mr. Schwartz, and was otherwise involved in and responsible for the actions of its employees, physicians and staff, as well as the management, control and policy making decisions that directly or indirectly affected the care that Mr. Schwartz received.

27.     Defendant Garden State Urology was and is a professional corporation, partnership or other entity duly organized and existing under the laws of the State of New Jersey, held itself out to the public and more particularly Mr. Schwatz as utilizing and employing medical personnel possessing and using the proper degree of learning and skill and who would undertake to use reasonable care and diligence in the treatment of the public and more particularly Mr. Schwartz, and was otherwise involved in and responsible for the actions of its employees, physicians and staff, as well as the management, control and policy making decisions that directly or indirectly affected the care that Mr. Schwartz received.

## II.     FACTS

28.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "27" inclusive, with the same force and effect as if set forth at length herein.

6

29.     On August 13, 2010, plaintiff Mr. Schwartz presented to AHS Hospital
emergency department complaining of abdominal pain and an elevated lipase.   Mr. Schwartz
was observed in the AHS Hospital emergency department for four hours following which he was
admitted to the hospital.  At the time of admission to AHS Hospital, Mr. Schwartz's admitting
diagnosis was pancreatitis.

30.     On August 14, 2010, plaintiff Mr. Schwartz underwent an abdominal CT scan,
ordered by defendant Dr. Kuo.  At approximately 6:50 p.m. that evening Mr. Schwartz was
discharged home by defendant Dr. Kuo with instructions to follow up as an outpatient with
defendant Dr. Blumberg.  At the time of his discharge Mr. Schwartz was provided copies of his
liver function test and an abdominal ultrasound report, but an official reading of the abdominal
CT scan was not available. Mr. Schwartz's diagnosis at the time of his discharge from defendant
AHS Hospital was acute pancreatitis.

31.     On August 15, 2010, defendant Dr. Kuo dictated a Discharge Summary relating to
Mr. Schwartz's admission from August 13, 2010 through August 14, 2010.  In the Discharge
Summary Dr. Kuo lists Mr. Schwartz's principle diagnoses as pancreatitis, congenital bladder
abnormality, and alcohol use.  At the conclusion of the summary Dr. Kuo indicated that at
discharge Mr. Schwartz was prescribed Bactrim for a UTI but that the "bladder finding" should
be followed up on.

32.     On August 16, 2010, non-party Thaddeus M. Yablonsky, M.D electronically
signed the type written report relating to the CT scan that plaintiff Mr. Schwartz had undergone
two days prior.  In the "Impression" section of the CT scan report Dr. Yablonsky noted "nodular
thickening of the posterior bladder wall.  Correlation with cystoscopy is recommended as
malignancy is not excluded

7

33.     On August 27, 2010, plaintiff Mr. Schwartz was seen by defendant Dr. Chevinsky at defendant Allied Surgical Group for a surgical evaluation. Dr. Chevinksy noted Mr. Schwartz's recent hospitalization for a diagnosis of pancreatitis, reviewed the laboratory data, and the results of the August 14, 2010 abdominal CT scan, specifically the finding of a "nodular thickening of the bladder wall". At the time of this visit Mr. Schwartz had an appointment to see defendant Dr. Blumberg and defendant Dr. Chevinsky requested that Mr. Schwartz follow up with him after the visit with Dr. Blumberg.

34.     On September 1, 2010, plaintiff Mr. Schwartz was seen by defendant Dr. Blumberg. Prior to this visit, on August 30, 2010, Mr. Schwartz completed a New Patient Information form wherein he listed defendant Dr. Chevinsky as his referring physician. Mr. Schwatz also completed a Patient History Form wherein he documented frequent urine infection, frequent urination and impaired bladder function in the Review of Systems section and as for prior surgeries listed diverticulectomy and transurethral incision of the prostate. During the visit Dr. Blumberg performed a physical examination, listed his impression as chronic pancreatitis, and gave Mr. Schwartz a prescription to undergo a MRCP.

35.     On September 7, 2010, plaintiff Mr. Schwartz presented to defendant Dr. Atlas of defendant Garden State Urology on referral from defendant Dr. Chevinsky. At this visit Mr. Schwartz complained of intermittent gross hematuria, a finding confirmed on urinalysis. Dr. Atlas also noted that Mr. Schwartz had undergone a CT scan that had revealed nodular thickening of the postural bladder wall. At the conclusion of the visit Dr. Atlas' opinion was that Mr. Schwartz should undergo a cystoscopy to evaluate the source of the hematuria.

36.     On September 9, 2010, plaintiff Mr. Schwartz presented to defendant AHS Hospital's outpatient radiology service to undergo a magnetic resonance

8

cholangiopancreatography (hereinafter, "MRCP") study that was ordered by defendant Dr. Blumberg. The MRCP was read by non-party Sean Calhoun, D.O. and was correlated with the CT scan that Mr. Schwartz had undergone on August 14, 2010.

37.     On September 15, 2010, plaintiff Mr. Schwartz presented to defendant Dr. Blumberg for a follow up visit.

38.     On September 24, 2010, plaintiff Mr. Schwartz underwent an endoscopic retrograde cholangiopancreatography (hereinafter, "ERCP") with sphincterotomy and ERCP with removal of stones performed by non-party Savreet Sarkaria, M.D.

39.     On November 24, 2010, plaintiff Mr. Schwartz underwent a cholecystectomy performed by Leon H. Pachter, M.D., a non-party to this action.

40.     On February 10, 2011, plaintiff Mr. Schwartz underwent a cystometry, electromyogram, and voiding cystourethrogram performed by Steven A. Kaplan, M.D. (hereinafter, "Dr. Kaplan"), a non-party to this action.

41.     On March 7, 2011, plaintiff Mr. Schwartz underwent a cystoscopy and bladder biopsy with fulguration of lesion performed by Dr. Kaplan.

42.     On April 7, 2011, plaintiff Mr. Schwartz underwent a transurethral resection of multiple bladder tumors, transurethral resection of prostatic urethral tumors, and placement of a left ureteral stent performed by Dr. Kaplan.

43.     On April 28, 2011, plaintiff Mr. Schwartz underwent a restaging transurethral resection of the bladder for a pre-operative diagnosis of bladder cancer and hematuria performed by non-party Richard Lee, M.D.

44.     On April 29, 2011, plaintiff Mr. Schwartz was referred to non-party Overlook Hospital by defendant Dr. Blumberg for complaints of abdominal distention. Later that day Mr.

9

Schwartz underwent a CT scan of his abdomen and pelvis that was then compared to the CT scan performed on August 14, 2010. The new CT scan showed that Mr. Schwartz continued to have a thickened urinary bladder but had also developed multiple haptic lesions that were read as being suspicious for metastatic disease. The CT scan was unable to definitively identify Mr. Schwartz's bladder as the primary source of the neoplasm.

45.     On May 18, 2011, plaintiff Mr. Schwartz was seen by non-party Matthew Milowsky, M.D. of Memorial Hospital for Cancer and Allied Diseases who noted Mr. Schwartz to have metastatic urothelial cancer with extensive liver metastases and bone and lymph node involvement, diagnoses associated with a poor prognosis.

46.     On or after May 4, 2011, plaintiffs Mr. and Mrs. Schwartz became aware of the recommendations stemming from the August 14, 2010 CT scan, more specifically, for correlation with cystoscopy to rule out the possibility of malignancy.

47.     On September 8, 2011 plaintiff Mr. Schwartz passed away.

48.     None of the defendants discussed the various risks and benefits of differing medical tests, monitoring, treatment or procedures with Mr. Schwartz, including but not limited to further radiographic testing and monitoring, cystoscopy, biopsy, nor the dangers and risks potentially posed by failing to do any of the above-mentioned testing and procedures.

## III.    COUNT I – MEDICAL MALPRACTICE – DUTY OF CARE

49.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "48" inclusive, with the same force and effect as if set forth at length herein.

50.     At all times herein mentioned, the Defendants, either directly or through their agents, servants, partners and/or employees, undertook, agreed and otherwise had the duty to

10

render medical care to Mr. Schwartz with at least such skill, ability and care as is ordinarily provided as reasonably required by similarly situated care providers.

51.     Defendants owed Mr. Schwartz the duty of protecting and caring for him in a manner and with a degree of care occasioned by Mr. Schwartz's then-existing physical condition, which rendered Mr. Schwartz completely unable to care for himself or to look after his own safety. On these occasions, Mr. Schwartz was in severe pain and in a helpless condition, as a patient of Defendants and the duty to care for Mr. Schwartz on these occasions was a duty which Defendants could not delegate to anyone else and which was well known to Defendants and their agents, servants and employees.

52.     Further, Defendants held themselves out to the public in general and to Mr. Schwartz in particular as specialists in the fields of internal medicine, general surgery, surgical oncology, gastroenterology and urology, that they would have and employ not merely the knowledge and skill of a general practitioner, but that they had and would employ the knowledge and skill normally possessed and used by the average specialist in their fields at the time they attended to and treated Mr. Schwartz.

53.     Defendants, directly or acting through their agents, servants or employees, breached their duty of care to Mr. Schwartz and were directly or vicariously responsible for the following acts of negligence, any one of which, taken either separately or with another, proximately caused permanent and painful injuries, including, but not limited to, each of the following acts or omissions:

> (a) failure to perform repeat radiological testing;
> (b) failure to perform a cystoscopy;
> (c) failure to perform follow-up testing relating to bladder thickening;
> (d) failure to diagnose bladder cancer;

11

(e) failure to refer Mr. Schwartz to a specialist for work-up of his bladder thickening;

(f) failure to keep accurate medical records;

(g) failure to keep accurate copies of medical records;

(h) failure to follow the policies and procedures for medical care and follow-up;

(i) failure to follow the polic ies and procedures for urological care;

(j) failure to follow the polic ies and procedures for gastroenterological care;

(k) failure to follow the policies and procedures for surgical care;

(l) failure to follow the polic ies and procedures for surgical oncological care;

(m) failure to communicate the relative risks and benefits of the actual or alternative treatments or procedures;

(n) failure to prevent injury;

(o) failure to properly monitor, supervise, control and/or direct the medical staff and/or the medical treatment rendered to Mr. Schwartz;

(p) failure to exercise a reasonable and appropriate degree of care for Mr. Schwartz, given his circumstances and known physical conditions.

54.     At all times herein, the agents, servants and employees of defendant AHS

Hospital were acting within the course and scope of their employment or duties.

55.     At all times herein, the agents, servants and employees of defendant Allied

Surgical Group were acting within the course and scope of their employment or duties.

56.     At all times herein, the agents, servants and employees of defendant Garden State

Urology were acting within the course and scope of their employment or duties.

57.     As the result of the aforesaid negligent acts and omissions, Mr. Schwartz was

caused to suffer, in part, the following injuries:

(a) bladder cancer;

(b) high grade bladder cancer;

(c) metastases to the liver;

(d) metastases to the lymph nodes;

(e) metastases to bone;

(f) mental distress;

(g) pain;

12

       (h) need for multiple hospitalizations;

       (i) need for inv asive treatments;

       (j) loss of enjo yment of life; and

       (k) death.

58.     These occurrences and resulting injuries occurred without any fault or

wrongdoing on the part of Mr. Schwartz.

59.     As a result of the aforesaid and injuries, Mr. Schwartz was adversely affected,

suffering causing past pain and suffering, wrongful death, repeated hospitalization, lost earnings

and loss of life's pleasures and pecuniary loss.

WHEREFORE, Plaintiffs seek judgment against the Defendants, both jointly and

severally, for damages, together with attorney's fees and costs of suit, and such other and further

relief as the court may deem proper.

### IV.    COUNT II – MEDICAL MALPRACTICE – INCREASED RISK

60.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through

"59" inclusive, with the same force and effect as if set forth at length herein.

61.     Defendants, directly or acting through their agents, servants or employees,

breached their duty of care to Mr. Schwartz and were directly or vicariously responsible for the

following acts of negligence, any one of which, taken either separately or with another, were a

substantial factor or factors that increased the risk of harm that proximately caused permanent

and painful injuries, including, but not limited to, each of the following acts or omissions:

       (a) failure to perform repeat radiological testing;

       (b) failure to perform a cystoscopy;

       (c) failure to perform follow-up testing relating to bladder thickening;

       (d) failure to diagnose bladder cancer;

       (e) failure to refer Mr. Schwartz to a specialist for work-up of his bladder thickening;

(f) failure to keep accurate medical records;

(g) failure to keep accurate copies of medical records;

(h) failure to follow the policies and procedures for medical care and follow-up;

(i) failure to follow the polic ies and procedures for urological care;

(j) failure to follow the polic ies and procedures for gastroenterological care;

(k) failure to follow the policies and procedures for surgical care;

(l) failure to follow the polic ies and procedures for surgical oncological care;

(m) failure to communicate the relative risks and benefits of the actual or alternative treatments or procedures;

(n) failure to prevent injury;

(o) failure to properly monitor, supervise, control and/or direct the medical staff and/or the medical treatment rendered to Mr. Schwartz;

(p) failure to exercise a reasonable and appropriate degree of care for Mr. Schwartz, given his circumstances and known physical conditions.

62.     At all times herein, the agents, servants and employees of defendant AHS

Hospital were acting within the course and scope of their employment or duties.

63.     At all times herein, the agents, servants and employees of defendant Allied

Surgical Group were acting within the course and scope of their employment or duties.

64.     At all times herein, the agents, servants and employees of defendant Garden State

Urology were acting within the course and scope of their employment or duties.

65.     As a result of the aforesaid negligent acts and omissions, Plaintiff was caused to

suffer, in part, the following injuries:

(a) bladder cancer;

(b) high grade bladder cancer;

(c) metastases to the liver;

(d) metastases to the lymph nodes;

(e) metastases to bone;

(f) mental distress;

(g) pain;

(h) need for multiple hospitalizations;

14

     (i) need for inv asive treatments;

     (j) loss of enjo yment of life; and

     (k) death.

66.  These occurrences and resulting injuries occurred without any fault or

wrongdoing on the part of Mr. Schwartz.

67.  As the result of the aforesaid injuries, Mr. Schwartz's health was adversely

affected, causing past pain and suffering, wrongful death, physical disability, medical care, loss

of earnings, repeated hospitalizations, multiple surgical interventions along with attendant pain

and suffering and loss of life's pleasures.

WHEREFORE, Plaintiffs seek judgment against the Defendants, both jointly and

severally, for damages, together with attorney's fees and costs of suit, and such other and further

relief as the court may deem proper.

## V.  COUNT III – MEDICAL MALPRACTICE – INFORMED CONSENT

68.  Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through

"67" inclusive, with the same force and effect as if set forth at length herein.

69.  Defendants, directly or acting through their agents, servants or employees, failed

to inform Mr. Schwartz of the risks, hazards, options and alternatives connected to the medical

care prescribed and administered to him including their duty to evaluate the relevant information

and disclose all courses of treatment that were medically reasonable under the circumstances,

including the advantages and risks of each option or alternative, in a manner that was or

reasonably could have been understood by Plaintiff, so that informed consent could be given.

70.  Reasonably prudent persons in Mr. Schwartz's position would not have consented

to the treatment rendered or would have sought or chosen alternative treatment that was not

rendered had he been fully informed of the risks, hazards, options and alternatives connected with said treatment or non-treatment.

71. The failure to adequately and fully inform Mr. Schwartz of the risks, hazards, options and alternatives of the treatment rendered or to offer him alternative treatment that would have been appropriate to the condition that he was then suffering, including but not limited to bladder cancer, was a proximate cause of the injuries and damages Mr. Schwartz sustained as each and every one of his subsequent injuries was a reasonably foreseeable outcome of the negligence and omissions alleged, as set forth above and incorporated herein.

72. The failure to adequately and fully inform Mr. Schwartz of the risks, hazards, options and alternatives of the treatment rendered and of failing to seek, obtain and undergo more appropriate alternative treatment(s) for the condition that he was then suffering, including but not limited to bladder cancer, was a substantial factor that increased the risk of harm and of the injuries and damages sustained by Mr. Schwartz which he did, in fact, suffer, and which were reasonably foreseeable as a result of the defendants' negligence and omissions, as set forth above and incorporated herein.

WHEREFORE, Plaintiffs seek judgment against the Defendants, both jointly and severally, for damages, together with attorney's fees and costs of suit, and such other and further relief as the court may deem proper.

## VI. COUNT IV - CONSORTIUM

73. Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "72" inclusive, with the same force and effect as if set forth at length herein.

74. Plaintiff decedent's widow, Barbara Schwartz (hereinafter, "Mrs. Schwartz"), suffered a pecuniary loss of companionship as a direct and proximate result of Plaintiff's

16

decedent's death. Specifically, Plaintiff's decedent provided Mrs. Schwartz with daily care, company and attention. In addition, Plaintiff's decedent accompanied and provided Mrs. Schwartz with companionship to social and entertainment events. Furthermore, Plaintiff's decedent performed services in the marital household. All of the services described above were of great pecuniary value to Mrs. Schwartz.

WHEREFORE, Plaintiffs seek judgment against the Defendants, both jointly and severally, for damages, together with attorney's fees and costs of suit, and such other and further relief as the court may deem proper.

## VII.    COUNT V – WRONGFUL DEATH

75.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "74" inclusive, with the same force and effect as if set forth at length herein.

76.     On June 12, 2012, plaintiff Mrs. Schwartz was granted Letters Testamentary with Limitations by the Surrogate's Court of the County of Suffolk, New York. A copy of plaintiff Mrs. Schwartz's Letters Testamentary with Limitations is attached as Exhibit 'A', and is incorporated into this complaint by reference.

77.     As a direct and proximate result of Defendants' negligence, Mr. Schwartz's body was severely injured, and as a further direct and proximate result of Defendants' negligence, Mr. Schwartz died.

78.     Plaintiff decedent Mr. Schwartz is survived by Mrs. Schwartz, Plaintiff's decedent's spouse, who is entitled to take Plaintiff decedent's intestate personal property, and who has suffered pecuniary injury, including the loss of Plaintiff's decedent's support, as a direct and proximate result of Plaintiff's decedent's death.

79.     Plaintiff's decedent's death occurred on September 8, 2011. This action was commenced on a date within two years of Plaintiff's decedent's death.

80.     Plaintiff Mrs. Schwartz, as Plaintiff's decedent's surviving spouse, is entitled to recover damages as Plaintiff's decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled herein, pursuant to N.J.S.A. 2A:15-3.

81.     Plaintiff Mrs. Schwartz is entitled to recover punitive damages and damages for the pain and suffering caused to Plaintiff's decedent Mr. Schwartz from the acts and omissions of the Defendants as specifically pled herein, including, without limitation, punitive damages pursuant to N.J.S.A. 2A:15-3.

WHEREFORE, Plaintiffs seek judgment on this count against the Defendants and, in the alternative, for the damages resulting from the death of Plaintiff's decedent, including, without limitation, Plaintiff's decedent's pecuniary injury, together with all hospital, medical and funeral expenses as specifically provided for under the New Jersey Wrongful Death Act, N.J.S.A. 31-1 *et seq.*, as well as compensatory damages, exemplary damages, attorney's fees, interest and costs of suit, including, without limitation, punitive damages as provided for under the New Jersey Survivor's Act, N.J.S.A. 2A:15-3 *et seq.*, an all such other relief as the court may deem proper.

## IX.     COUNT VI – SURVIVAL ACTION

82.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "81" inclusive, with the same force and effect as if set forth at length herein.

83.     As a result of the actions and inactions of the Defendants, Plaintiff decedent Mr. Schwartz was caused to suffer before his death.

84.     Plaintiff Mrs. Schwartz, on behalf of Plaintiff decedent's estate, seeks damages compensable under the Survival Act, N.J.S.A. 2A:14-5 (or any successor statute) against the

18

Defendants. Plaintiff Mrs. Schwartz, in her own right, seeks damages compensable under the

Survival Act, N.J.S.A. 2A:15-3 (or any successor statute) against the Defendants.

WHEREFORE, Plaintiffs seek judgment against the Defendants for compensatory

damages and punitive damages, together with interest, costs of suit and attorney's fees and such

other relief as the court may deem proper.

## X.     COUNT VII – MEDICAL MALPRACTICE –
## FAILURE TO MAKE PROPER EXAMINATION

85.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through

"84" inclusive, with the same force and effect as if set forth at length herein.

86.     Defendants did not have or exercise the degree of skill, care and knowledge

ordinarily exercised or possessed by physicians and emergency medical staff in Morris County,

New Jersey, or in similar localities, and was guilty of negligence in failing to properly examine

Plaintiff's decedent Mr. Schwartz so that Defendants could properly diagnose Plaintiff's

decedent's condition.

WHEREFORE, Plaintiffs seek judgment against the Defendants for compensatory

damages and punitive damages, together with interest, costs of suit and attorney's fees and such

other relief as the court may deem proper.

## XI.     COUNT VIII – MEDICAL MALPRACTICE –
## FAILURE TO USE PROPER DIAGNOSTIC
## PROCEDURES

87.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through

"86" inclusive, with the same force and effect as if set forth at length herein.

88.     At that time and place, Defendants negligently failed to use the skill and diligence

in making a diagnosis ordinarily used by physicians and emergency medical staff of ordinary

skill and learning in practice in Morris County, New Jersey, or similar localities, in that

defendants failed to take repeat radiographic studies, perform cystoscopies, and perform biopsies in spite of the nature of Plaintiff decedent's complaints, signs and symptoms.

WHEREFORE, Plaintiffs seek judgment against the Defendants for compensatory damages and punitive damages, together with interest, costs of suit and attorney's fees and such other relief as the court may deem proper.

## IX. COUNT IX – NEGLIGENT SUPERVISION

89. Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "88" inclusive, with the same force and effect as if set forth at length herein.

90. Defendant Dr. Kuo, at all times herein mentioned, was employed by defendant AHS Hospital.

91. Defendant Dr. Kuo, at all times herein mentioned, was negligent and careless and known to be so by defendant AHS Hospital who, regardless of that knowledge hired defendant Dr. Kuo and failed to properly credential, train and supervise this defendant.

92. At all times herein mentioned, Mr. Schwartz was a patient of defendant AHS Hospital.

93. Defendant Dr. Chevinsky, at all times herein mentioned, was employed by defendant Allied Surgical Group.

94. Defendant Dr. Chevinsky, at all times herein mentioned, was negligent and careless and known to be so by defendant Allied Surgical Group who, regardless of that knowledge hired defendant Dr. Chevinsky and failed to properly credential, train and supervise this defendant.

95. At all times herein mentioned, Mr. Schwartz was a patient of defendant Allied Surgical Group.

96.     Defendants Dr. Atlas, at all times herein mentioned, was employed by defendant Garden State Urology.

97.     Defendant Dr. Atlas, at all times herein mentioned, was negligent and careless and known to be so by defendant Garden State Urology who, regardless of that knowledge hired defendant Dr. Atlas and failed to properly credential, train and supervise this defendant.

98.     At all times herein mentioned, Mr. Schwartz was a patient of defendant Garden State Urology.

99.     From August 13, 2010 through May 2011, Mr. Schwartz presented to AHS Hospital, Allied Surgical Care, and Garden State Urology where defendants Dr. Kuo, Dr. Chevinsky, and Dr. Atlas caused him to sustain severe injuries due to their negligence, omissions and the reasonably foreseeable results of the same including high grade metastatic urothelial cancer with metastases to the liver, lymph nodes and bone and related complications.

100.    Mr. Schwartz's injuries and damages were a direct and proximate result of the negligence and omissions of the Defendants in the following particulars, without which the injuries Mr. Schwartz suffered, including wrongful death, would not have occurred:

> (a) In hiring defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas without proper investigation into their credentials, practices and training when defendants AHS Hospital, Allied Surgical Care and Garden State Urology knew or should have known that defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas were negligent and careless persons who did not have the skill requisite to a physician practicing in their respective specialty areas;
>
> (b) In permitting defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas to provide care and treatment to the public, and more specifically to Mr. Schwartz, when defendants AHS Hospital, Allied Surgical Care and Garden State Urology knew or should have known that the likely result would be injury to Mr. Schwartz;
>
> (c) In continuing to employ defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas after having notice of defendants' Dr. Kuo's, Dr. Chevinsky's and Dr. Atlas's negligence, lack of skill and training, carelessness and failure to properly appreciate the complaints and physical signs and symptoms suffered and complained of by their patients.

WHEREFORE, Plaintiffs seek judgment against the Defendants for compensatory

damages and punitive damages, together with interest, costs of suit and attorney's fees and such

other relief as the court may deem proper.

Dated: August 26, 2013

NAPOLI BERN RIPKA SHKOLNIK, LLP

By: _Vincent L. Gonzalez_

Vincent L. Gonzalez, Esquire
Attorney for Plaintiffs

## DESIGNATION OF TRIAL COUNSEL

Pursuant to N.J.S.A. 4:25-4, Vincent L. Gonzalez, Esquire is designated as trial counsel for Plaintiffs in the above matter.

## CERTIFICATION OF OTHER ACTION

Pursuant to N.J.S.A. 4:5-1, it is stated that the matter in controversy is the subject of another action currently pending in the Supreme Court of New York County, State of New York, captioned *Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, et al. v. Steven A. Kaplan, M.D., et al.,* Index Number 805004/2013. Also, to the best of our belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, we know of no other parties that should be joined in the above action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

## JURY DEMAND

The Plaintiffs demand trial by a jury on all of the triable issues of this complaint, pursuant to N.J.S.A 1:8-2(b) and 4:35-1(a).

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to N.J.S.A. 4:10-2(b), demand is made that Defendants disclose to Plaintiffs' attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiffs' attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include

and cover not only primary coverage, but also any and all excess, catastrophe, and umbrella

policies.

## DEMAND FOR ANSWERS TO STANDARD
## INTERROGATORIES

Plaintiffs hereby demand answers to the Uniform Interrogatories to be Answered by

Defendants in All Medical Malpractice & Personal Injury Cases (Forms C & C3) within the time

limits set forth in the New Jersey Court Rules.

Dated: August 26, 2013

NAPOLI BERN RIPKA SHKOLNIK, LLP

By: _____

Vincent L. Gonzalez, Esquire
Attorney for Plaintiffs