NAPOLI BERN RIPKA SHKOLNIK, LLP
By:      Vincent Gonzalez, Esquire
350 Fifth Avenue, Suite 7413
New York, New York 10118
Phone: (212) 267-3700
E-mail: vgonzalez@napolibern.com
Attorneys for Plaintiffs
Barbara Schwartz, as Executor of the Estate of
Jay B. Schwartz, and Barbara Schwartz, Individually

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BARBARA SCHWARTZ, as Executor of the Estate of JAY B. SCHWARTZ, and BARBARA SCHWARTZ, Individually, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION |
| DAVID KUO, M.D., STEVEN GOSHLER, M.D., AARON CHEVINSKY, M.D., DARREN BLUMBERG, M.D., IAN ATLAS, M.D., AHS HOSPITAL CORP./MORRISTOWN MEDICAL CENTER, ALLIED SURGICAL GROUP, and GARDEN STATE UROLOGY, | : : : : : : : : | NO.:_____  AMENDED COMPLAINT & JURY DEMAND |

Plaintiffs Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, and Barbara Schwartz, Individually, by their attorneys, NAPOLI BERN RIPKA SHKOLNIK, LLP, by way of an Amended Complaint against the Defendants, allege and state as follows:

**I.      JURISDICTION**

**A. The Plaintiffs' Citizenship**

1.      This matter is properly filed in the United States District Court, District of New Jersey on the basis of diversity of citizenship of the respective litigants pursuant 28 USC 1332.

1

2.      Plaintiff Barbara Schwartz, the lawful spouse of the decedent Jay B. Schwartz at the time of his death, was on that date, and is, a citizen of the State of New York, residing at 358 Altessa Boulevard, Melville, New York 11747.

3.      Plaintiffs' decedent, Jay B. Schwartz, died on September 8, 2011.  Annexed as **Exhibit A** is a copy of his death certificate.   On the date of his death, Jay B. Schwartz's permanent residence was 358 Altessa Boulevard, Melville, New York 11747 in the County of Suffolk, State of New York.

4.      Plaintiff Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, was on September 8, 2011, and at the time of the filing of the original complaint in this matter, a citizen of the State of New York, based on the decedent's last permanent residence of 358 Altessa Boulevard, Melville, New York 11747, County of Suffolk, State of New York.

5.      On August 24, 2011 decedent Jay B. Schwartz and plaintiff Barbara Schwartz finalized the purchased their new home at 358 Altessa Boulevard, Melville, New York.   Annexed as **Exhibits B and C** are copies of the Deed and the Declaration Sheet for the Homeowners Insurance policy for the New York property respectively.

6.      Although the Deed references Mr. Schwartz's residence as 10 Stonehedge Court, Warren, New Jersey at the time of the August 24, 2011 purchase of the New York property, the Warren, New Jersey property had already, in fact, been sold on July 28, 2011.  Annexed as **Exhibit D and E** respectively are copies of the HUD-1 Settlement Statement evincing the July 28, 2011 sale of the 10 Stonehedge Court, Warren, New Jersey property and closing papers for the purchase of the 358 Altessa Boulevard, NY property on August 24, 2011.

7.      For all of 2011, up to and including the date of the purchase of their new Melville, NY residence, both plaintiff Barbara Schwartz and Jay B. Schwartz maintained a temporary residence at the Homewood Suites Hilton hotel in Plainview, New York while in the process of selling their Warren, New Jersey home and permanently relocating to the Melville, New York area.

8.      Barbara and Jay Schwartz's relocation to the Melville, New York area was paid for by Verint Systems, Inc., Mr. Schwartz's new employer.  Verint Systems, Inc.'s Corporate

2

Headquarters is, and was, located at 330 South Service Road Melville, New York in September, 2011.

9.     In September, 2010 Mr. Schwartz applied for and was hired by Verint Systems, Inc. to work out of their Melville, New York offices.  A formal written offer of employment was extended to Mr. Schwartz.   Mr. Schwartz accepted the employment offer.  Copies of the signed offer and acceptance are annexed as **Exhibit F.**

10.    A relocation allowance that was made part of the employment offer extended to Jay Schwartz.  Both Jay B. Schwartz and Barbara Schwartz agreed to relocate from New Jersey to the Melville, New York area before the employment offer was finalized.  The Schwartzs' relocation or moving and temporary living expenses were monitored and audited by Verint Systems, Inc. who set aside $45,000 to effectuate the Schwartzs' relocation to New York.

11.    Annexed as **Exhibit G** are copies of e-mails dated September 7, 2010 and September 8, 2010,  between Jay B. Schwartz and Sherri Mattison, Recruiting Manager for Verint Systems, Inc. wherein the offer of employment was discussed, made and accepted and the request for assistance with temporary living accommodations pending the sale of the Warren, N.J. home is referenced.  Also annexed are copies of e-mails dated September 7, 2011 between Verint Human Resources employees Johanny Creary and Nancy DeVito wherein the remaining credit of $5,913.85 from Mr. Schwartz's relocation allowance agreed to in the hiring documents is discussed.

12.    Also annexed as **Exhibit H** is the Verint Systems, Inc. Welcome letter to Jay B. Schwartz dated September 24, 2010.   Annexed as **Exhibit I** are copies of the Verint Expense Audit for the Moving and Temporary Living Expenses stipend provided to the Schwartzs.

13.    As is demonstrated by the Verint Welcome letter of September 24, 2010 to Jay B. Schwartz and the Moving and Temporary Living Expenses audit, the new employment in Melville, NY and the temporary living accommodations from the end of 2010 through the purchase of their new Melville, NY residence, the decision to move their permanent residence from New Jersey to New York was made by the Schwartz's in 2010.

3

14.     As additional evidence of the decedent's decision to move to New York, annexed as **Exhibit J** is an email from James Carlton Longo of Weickert Realtors dated January 25, 2011 evincing that negotiations between the Schwartzs' and the Dardis, the ultimate buyers, for the sale of the Warren, NJ residence were already underway in January, 2011.

15.     On June 12, 2012 a Certificate of Appointment of Executor granting Letters Testamentary with Limitations for the Estate of Jay B. Schwartz were issued by the Surrogate's Court of the State of New York, Suffolk County, to Barbara Sheryl Schwartz. The Certificate evinces the Surrogate's determination that the decedent's domicile was Suffolk County at the time of his death.   Annexed as **Exhibit K** is a copy of the Certificate of Appointment of Executor granting Letters  Testamentary with Limitations for the Estate of Jay B. Schwartz to Barbara Sheryl Schwartz.

### B. The Defendants' Citizenship

16.     Defendant David Kuo, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 100 Madison Avenue, Morristown, New Jersey 07960.

17.     Defendant Aaron Chevinsky, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 261 James Street, Suite 2G, Morristown, New Jersey 07960.

18.     Defendant Darren Blumberg, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 65 Ridgedale Avenue, Cedar Knolls, New Jersey 07927.

19.     Defendant Ian Atlas, M.D., is, upon information and belief, a citizen of the State of New Jersey having his principle place of business at 261 James Street, Suite 3A & 3D, Morristown, New Jersey 07960.

20.     Defendant AHS Hospital Corp./Morristown Medical Center is a corporation organized and existing under the laws of the State of New Jersey, having an office and principle business at 100 Madison Avenue, Morristown, New Jersey 07960.

21.     Defendant Allied Surgical Group is a corporation organized and existing under the laws of the State of New Jersey, having an office and principle business at 261 James Street, Suite 2G, Morristown, New Jersey 07960.

22.     Defendant Garden State Urology is a corporation organized and existing under the laws of the State of New Jersey, having an office and principle business at 261 James Street, Suite 3A & 3D, Morristown, New Jersey 07960.

23.     On January 3, 2013, Plaintiffs filed a Summons and Verified Complaint with the County Clerk of the Supreme Court of the State of New York, County of New York, captioned Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, and Barbara Schwartz, Individually, v. Steven A. Kaplan, M.D., David Kuo, M.D., Steven Gohsler, M.D., Aaron Chevinsky, M.D., Darren Blumberg, M.D., Ian Atlas, M.D., H. Leon Pachter, M.D., Brady Urologic Health Center, New York Presbyterian Hospital, Morristown Memorial Hospital, Allied Surgical Group, Garden State Urology, NYU Langone Medical Center and School of Medicine, Index Number 805004/2013.

24.     On or about February 25, 2013 counsel for named defendant Darren Blumberg, M.D. moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction and for improper service.

25.     On or about March 1, 2013 counsel for named defendants AHS Hospital Corp., sued thereunder as Morristown Medical Center, and David Kuo, M.D. moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction and for improper service.

26.     On or about March 21, 2013 counsel for named defendants Ian Atlas, M.D. and Garden State Urology moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction and for improper service.

27.     On or about April 9, 2013 counsel for named defendant Aaron Chevinsky, M.D. moved in the Supreme Court of the State of New York, New York County, to have the above-captioned action dismissed with prejudice for lack of personal jurisdiction.

28.     On or about  July 24, 2013 the Honorable Joan B. Lobis of the Supreme Court of the State of New York, County of New York granted the moving defendants' motions to dismiss Plaintiffs' complaint without prejudice.

29.     The matter in controversy exceeds the sum of SEVENTY FIVE THOUSAND and NO/100 ($75,000.00) DOLLARS, exclusive of interest and costs.

30.     This Court has jurisdiction over the subject matter of the within controversy by reason of diversity of citizenship of the parties, i.e. all plaintiffs are, and have been at all times relevant to this matter, citizens of New York State and the defendants are all citizens of the State of New Jersey, pursuant to 28 U.S.C. § 1332(a)(1).


## II.     VENUE

31.     Venue is proper in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391(a) and (c) as it is the district where the cause of action arose, where the defendants are located, and where all the named defendants are subject to personal jurisdiction.


## III.     PARTIES

32.     On or about June 12, 2012, prior to the commencement of this action, plaintiff Barbara Schwartz was granted Letters Testamentary by the Surrogate's Court of the County of Suffolk, State of New York, as to the Estate of deceased, Jay B. Schwartz, and continues to act under such appointment.

33.     Plaintiff Barbara Schwartz, as Executor of the Estate of Jay B. Schwartz, is suing on behalf of the estate of Jay B. Schwartz for medical malpractice and wrongful death.

34.     Plaintiff Barbara Schwartz, an individual, is suing on her own behalf for loss of consortium resulting from the alleged medical malpractice and wrongful death of decedent Jay B. Schwartz.

35.     Defendant David Kuo, M.D. (hereinafter, "Dr. Kuo"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including plaintiff's decent Jay B. Schwartz (hereinafter, "Mr. Schwartz"). Dr. Kuo rendered internal medical care to Mr. Schwartz as a treating internist at all times relevant herein.

36.     Defendant Aaron Chevinsky, M.D. (hereinafter, "Dr. Chevinsky"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including Mr. Schwartz. Dr. Chevinsky rendered general surgical and/or surgical oncological care to Mr. Schwartz as a treating general surgeon and/or surgical oncologist at all times relevant herein.

37.     Defendant Darren Blumberg, M.D. (hereinafter, "Dr. Blumberg"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including Mr. Schwartz. Dr. Blumberg rendered internal medical and gastroenterological care to Mr. Schwartz as a treating internist and gastroenterologist at all times relevant herein.

38.     Defendant Ian Atlas, M.D. (hereinafter, "Dr. Atlas"), was a physician duly licensed by the State of New Jersey to render medical care, diagnosis and treatment to members of the public, including Mr. Schwartz. Dr. Atlas rendered urological care to Mr. Schwartz as a treating urologist at all times relevant herein.

39.     Defendant AHS Hospital Corp./Morristown Medical Center (hereinafter, "AHS Hospital"), was and is a professional corporation, partnership or other entity duly organized and existing under the laws of the State of New Jersey, held itself out to the public and more particularly Mr. Schwatz as utilizing and employing medical personnel possessing and using the proper degree of learning and skill and who would undertake to use reasonable care and diligence in the treatment of the public and more particularly Mr. Schwartz, and was otherwise involved in and responsible for the actions of its employees, physicians and staff, as well as the

7

management, control and policy making decisions that directly or indirectly affected the care that Mr. Schwartz received.

40.     Defendant Allied Surgical Group was and is a professional corporation, partnership or other entity duly organized and existing under the laws of the State of New Jersey, held itself out to the public and more particularly Mr. Schwartz as utilizing and employing medical personnel possessing and using the proper degree of learning and skill and who would undertake to use reasonable care and diligence in the treatment of the public and more particularly Mr. Schwartz, and was otherwise involved in and responsible for the actions of its employees, physicians and staff, as well as the management, control and policy making decisions that directly or indirectly affected the care that Mr. Schwartz received.

41.     Defendant Garden State Urology was and is a professional corporation, partnership or other entity duly organized and existing under the laws of the State of New Jersey, held itself out to the public and more particularly Mr. Schwatz as utilizing and employing medical personnel possessing and using the proper degree of learning and skill and who would undertake to use reasonable care and diligence in the treatment of the public and more particularly Mr. Schwartz, and was otherwise involved in and responsible for the actions of its employees, physicians and staff, as well as the management, control and policy making decisions that directly or indirectly affected the care that Mr. Schwartz received.

## IV.     FACTS

42.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "41" inclusive, with the same force and effect as if set forth at length herein.

43.     On August 13, 2010, plaintiff Mr. Schwartz presented to AHS Hospital emergency department complaining of abdominal pain and an elevated lipase.   Mr. Schwartz was observed in the AHS Hospital emergency department for four hours following which he was admitted to the hospital.  At the time of admission to AHS Hospital, Mr. Schwartz's admitting diagnosis was pancreatitis.

44.     On August 14, 2010, plaintiff Mr. Schwartz underwent an abdominal CT scan, ordered by defendant Dr. Kuo.  At approximately 6:50 p.m. that evening Mr. Schwartz was discharged

home by defendant Dr. Kuo with instructions to follow up as an outpatient with defendant Dr. Blumberg. At the time of his discharge Mr. Schwartz was provided copies of his liver function test and an abdominal ultrasound report, but an official reading of the abdominal CT scan was not available. Mr. Schwartz's diagnosis at the time of his discharge from defendant AHS Hospital was acute pancreatitis.

45.     On August 15, 2010, defendant Dr. Kuo dictated a Discharge Summary relating to Mr. Schwartz's admission from August 13, 2010 through August 14, 2010. In the Discharge Summary Dr. Kuo lists Mr. Schwartz's principle diagnoses as pancreatitis, congenital bladder abnormality, and alcohol use. At the conclusion of the summary Dr. Kuo indicated that at discharge Mr. Schwartz was prescribed Bactrim for a UTI but that the "bladder finding" should be followed up on.

46.     On August 16, 2010, non-party Thaddeus M. Yablonsky, M.D electronically signed the type written report relating to the CT scan that plaintiff Mr. Schwartz had undergone two days prior. In the "Impression" section of the CT scan report Dr. Yablonsky noted "nodular thickening of the posterior bladder wall. Correlation with cystoscopy is recommended as malignancy is not excluded

47.     On August 27, 2010, plaintiff Mr. Schwartz was seen by defendant Dr. Chevinsky at defendant Allied Surgical Group for a surgical evaluation. Dr. Chevinksy noted Mr. Schwartz's recent hospitalization for a diagnosis of pancreatitis, reviewed the laboratory data, and the results of the August 14, 2010 abdominal CT scan, specifically the finding of a "nodular thickening of the bladder wall". At the time of this visit Mr. Schwartz had an appointment to see defendant Dr. Blumberg and defendant Dr. Chevinsky requested that Mr. Schwartz follow up with him after the visit with Dr. Blumberg.

48.     On September 1, 2010, plaintiff Mr. Schwartz was seen by defendant Dr. Blumberg. Prior to this visit, on August 30, 2010, Mr. Schwartz completed a New Patient Information form wherein he listed defendant Dr. Chevinsky as his referring physician. Mr. Schwatz also completed a Patient History Form wherein he documented frequent urine infection, frequent urination and impaired bladder function in the Review of Systems section and as for prior surgeries listed diverticulectomy and transurethral incision of the prostate. During the visit Dr.

9

Blumberg performed a physical examination, listed his impression as chronic pancreatitis, and gave Mr. Schwartz a prescription to undergo a MRCP.

49.     On September 7, 2010, plaintiff Mr. Schwartz presented to defendant Dr. Atlas of defendant Garden State Urology on referral from defendant Dr. Chevinsky.  At this visit Mr. Schwartz complained of intermittent gross hematuria, a finding confirmed on urinalysis.  Dr. Atlas also noted that Mr. Schwartz had undergone a CT scan that had revealed nodular thickening of the postural bladder wall.  At the conclusion of the visit Dr. Atlas' opinion was that Mr. Schwartz should undergo a cystoscopy to evaluate the source of the hematuria.

50.     On September 9, 2010, plaintiff Mr. Schwartz presented to defendant AHS Hospital's outpatient radiology service to undergo a magnetic resonance cholangiopancreatography (hereinafter, "MRCP") study that was ordered by defendant Dr. Blumberg.  The MRCP was read by non-party Sean Calhoun, D.O. and was correlated with the CT scan that Mr. Schwartz had undergone on August 14, 2010.

51.     On September 15, 2010, plaintiff Mr. Schwartz presented to defendant Dr. Blumberg for a follow up visit.

52.     On September 24, 2010, plaintiff Mr. Schwartz underwent an endoscopic retrograde cholangiopancreatography (hereinafter, "ERCP") with sphincterotomy and ERCP with removal of stones performed by non-party Savreet Sarkaria, M.D.

53.     On November 24, 2010, plaintiff Mr. Schwartz underwent a cholecystectomy performed by Leon H. Pachter, M.D., a non-party to this action.

54.     On February 10, 2011, plaintiff Mr. Schwartz underwent a cystometry, electromyogram, and voiding cystourethrogram performed by Steven A. Kaplan, M.D. (hereinafter, "Dr. Kaplan"), a non-party to this action.

55.     On March 7, 2011, plaintiff Mr. Schwartz underwent a cystoscopy and bladder biopsy with fulguration of lesion performed by Dr. Kaplan.

56.     On April 7, 2011, plaintiff Mr. Schwartz underwent a transurethral resection of multiple bladder tumors, transurethral resection of prostatic urethral tumors, and placement of a left ureteral stent performed by Dr. Kaplan.

57.     On April 28, 2011, plaintiff Mr. Schwartz underwent a restaging transurethral resection of the bladder for a pre-operative diagnosis of bladder cancer and hematuria performed by non-party Richard Lee, M.D.

58.     On April 29, 2011, plaintiff Mr. Schwartz was referred to non-party Overlook Hospital by defendant Dr. Blumberg for complaints of abdominal distention.  Later that day Mr. Schwartz underwent a CT scan of his abdomen and pelvis that was then compared to the CT scan performed on August 14, 2010.  The new CT scan showed that Mr. Schwartz continued to have a thickened urinary bladder but had also developed multiple haptic lesions that were read as being suspicious for metastatic disease.  The CT scan was unable to definitively identify Mr. Schwartz's bladder as the primary source of the neoplasm.

59.     On May 18, 2011, plaintiff Mr. Schwartz was seen by non-party Matthew Milowsky, M.D. of Memorial Hospital for Cancer and Allied Diseases who noted Mr. Schwartz to have metastatic urothelial cancer with extensive liver metastases and bone and lymph node involvement, diagnoses associated with a poor prognosis.

60.     On or after May 4, 2011, plaintiffs Mr. and Mrs. Schwartz became aware of the recommendations stemming from the August 14, 2010 CT scan, more specifically, for correlation with cystoscopy to rule out the possibility of malignancy.

61.     On September 8, 2011 plaintiff Mr. Schwartz passed away.

62.     None of the defendants discussed the various risks and benefits of differing medical tests, monitoring, treatment or procedures with Mr. Schwartz, including but not limited to further radiographic testing and monitoring, cystoscopy, biopsy, nor the dangers and risks potentially posed by failing to do any of the above-mentioned testing and procedures.

## V.    COUNT I – MEDICAL MALPRACTICE – DUTY OF CARE

63.    Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "62" inclusive, with the same force and effect as if set forth at length herein.

64.    At all times herein mentioned, the Defendants, either directly or through their agents, servants, partners and/or employees, undertook, agreed and otherwise had the duty to render medical care to Mr. Schwartz with at least such skill, ability and care as is ordinarily provided as reasonably required by similarly situated care providers.

65.    Defendants owed Mr. Schwartz the duty of protecting and caring for him in a manner and with a degree of care occasioned by Mr. Schwartz's then-existing physical condition, which rendered Mr. Schwartz completely unable to care for himself or to look after his own safety.  On these occasions, Mr. Schwartz was in severe pain and in a helpless condition, as a patient of Defendants and the duty to care for Mr. Schwartz on these occasions was a duty which Defendants could not delegate to anyone else and which was well known to Defendants and their agents, servants and employees.

66.    Further, Defendants held themselves out to the public in general and to Mr. Schwartz in particular as specialists in the fields of internal medicine, general surgery, surgical oncology, gastroenterology and urology, that they would have and employ not merely the knowledge and skill of a general practitioner, but that they had and would employ the knowledge and skill normally possessed and used by the average specialist in their fields at the time they attended to and treated Mr. Schwartz.

67.    Defendants, directly or acting through their agents, servants or employees, breached their duty of care to Mr. Schwartz and were directly or vicariously responsible for the following acts of negligence, any one of which, taken either separately or with another, proximately caused permanent and painful injuries, including, but not limited to, each of the following acts or omissions:

     (a)    failure to perform repeat radiological testing;

     (b)    failure to perform a cystoscopy;

     (c)    failure to perform follow-up testing relating to bladder thickening;

 (d) failure to diagnose bladder cancer;

 (e) failure to refer Mr. Schwartz to a specialist for work-up of his bladder thickening;

 (f) failure to keep accurate medical records;

 (g) failure to keep accurate copies of medical records;

 (h) failure to follow the policies and procedures for medical care and follow-up;

 (i) failure to follow the policies and procedures for urological care;

 (j) failure to follow the policies and procedures for gastroenterological care;

 (k) failure to follow the policies and procedures for surgical care;

 (l) failure to follow the policies and procedures for surgical oncological care;

 (m) failure to communicate the relative risks and benefits of the actual or alternative treatments or procedures;

 (n) failure to prevent injury;

 (o) failure to properly monitor, supervise, control and/or direct the medical staff and/or the medical treatment rendered to Mr. Schwartz;

 (p) failure to exercise a reasonable and appropriate degree of care for Mr. Schwartz, given his circumstances and known physical conditions.

68. At all times herein, the agents, servants and employees of defendant AHS Hospital were acting within the course and scope of their employment or duties.

69. At all times herein, the agents, servants and employees of defendant Allied Surgical Group were acting within the course and scope of their employment or duties.

70. At all times herein, the agents, servants and employees of defendant Garden State Urology were acting within the course and scope of their employment or duties.

71. As the result of the aforesaid negligent acts and omissions, Mr. Schwartz was caused to suffer, in part, the following injuries:

 (a) bladder cancer;

 (b) high grade bladder cancer;

(c)     metastases to the liver;

(d)     metastases to the lymph nodes;

(e)     metastases to bone;

(f)     mental distress;

(g)     pain;

(h)     need for multiple hospitalizations;

(i)     need for invasive treatments;

(j)     loss of enjoyment of life; and

(k)     death.

72.     These occurrences and resulting injuries occurred without any fault or wrongdoing on the part of Mr. Schwartz.

73.     As a result of the aforesaid and injuries, Mr. Schwartz was adversely affected, suffering causing past pain and suffering, wrongful death, repeated hospitalization, lost earnings and loss of life's pleasures and pecuniary loss.

**WHEREFORE**, Plaintiffs seek judgment against the Defendants, both jointly and severally, for damages, together with attorney's fees and costs of suit, and such other and further relief as the court may deem proper.

### VI.     COUNT II – MEDICAL MALPRACTICE – INCREASED RISK

74.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "73" inclusive, with the same force and effect as if set forth at length herein.

75.     Defendants, directly or acting through their agents, servants or employees, breached their duty of care to Mr. Schwartz and were directly or vicariously responsible for the following acts of negligence, any one of which, taken either separately or with another, were a substantial factor or factors that increased the risk of harm that proximately caused permanent and painful injuries, including, but not limited to, each of the following acts or omissions:

(a)     failure to perform repeat radiological testing;

(b)     failure to perform a cystoscopy;

(c)     failure to perform follow-up testing relating to bladder thickening;

(d)     failure to diagnose bladder cancer;

(e)     failure to refer Mr. Schwartz to a specialist for work-up of his bladder thickening;

(f)     failure to keep accurate medical records;

(g)     failure to keep accurate copies of medical records;

(h)     failure to follow the policies and procedures for medical care and follow-up;

(i)     failure to follow the policies and procedures for urological care;

(j)     failure to follow the policies and procedures for gastroenterological care;

(k)     failure to follow the policies and procedures for surgical care;

(l)     failure to follow the policies and procedures for surgical oncological care;

(m)     failure to communicate the relative risks and benefits of the actual or alternative treatments or procedures;

(n)     failure to prevent injury;

(o)     failure to properly monitor, supervise, control and/or direct the medical staff and/or the medical treatment rendered to Mr. Schwartz;

(p)     failure to exercise a reasonable and appropriate degree of care for Mr. Schwartz, given his circumstances and known physical conditions.

76.    At all times herein, the agents, servants and employees of defendant AHS Hospital were acting within the course and scope of their employment or duties.

77.    At all times herein, the agents, servants and employees of defendant Allied Surgical Group were acting within the course and scope of their employment or duties.

78.    At all times herein, the agents, servants and employees of defendant Garden State Urology were acting within the course and scope of their employment or duties.

79.    As a result of the aforesaid negligent acts and omissions, Plaintiff was caused to suffer, in part, the following injuries:

    (a)    bladder cancer;

    (b)    high grade bladder cancer;

    (c)    metastases to the liver;

    (d)    metastases to the lymph nodes;

    (e)    metastases to bone;

    (f)    mental distress;

    (g)    pain;

    (h)    need for multiple hospitalizations;

    (i)    need for invasive treatments;

    (j)    loss of enjoyment of life; and

    (k)    death.

80.    These occurrences and resulting injuries occurred without any fault or wrongdoing on the part of Mr. Schwartz.

81.    As the result of the aforesaid injuries, Mr. Schwartz's health was adversely affected, causing past pain and suffering, wrongful death, physical disability, medical care, loss of earnings, repeated hospitalizations, multiple surgical interventions along with attendant pain and suffering and loss of life's pleasures.

**WHEREFORE**, Plaintiffs seek judgment against the Defendants, both jointly and severally, for damages, together with attorney's fees and costs of suit, and such other and further relief as the court may deem proper.

## VII.   COUNT III – MEDICAL MALPRACTICE – INFORMED CONSENT

82.    Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "81" inclusive, with the same force and effect as if set forth at length herein.

83.    Defendants, directly or acting through their agents, servants or employees, failed to inform Mr. Schwartz of the risks, hazards, options and alternatives connected to the medical care prescribed and administered to him including their duty to evaluate the relevant information and disclose all courses of treatment that were medically reasonable under the circumstances, including the advantages and risks of each option or alternative, in a manner that was or reasonably could have been understood by Plaintiff, so that informed consent could be given.

84.    Reasonably prudent persons in Mr. Schwartz's position would not have consented to the treatment rendered or would have sought or chosen alternative treatment that was not rendered had he been fully informed of the risks, hazards, options and alternatives connected with said treatment or non-treatment.

85.    The failure to adequately and fully inform Mr. Schwartz of the risks, hazards, options and alternatives of the treatment rendered or to offer him alternative treatment that would have been appropriate to the condition that he was then suffering, including but not limited to bladder cancer, was a proximate cause of the injuries and damages Mr. Schwartz sustained as each and every one of his subsequent injuries was a reasonably foreseeable outcome of the negligence and omissions alleged, as set forth above and incorporated herein.

86.    The failure to adequately and fully inform Mr. Schwartz of the risks, hazards, options and alternatives of the treatment rendered and of failing to seek, obtain and undergo more appropriate alternative treatment(s) for the condition that he was then suffering, including but not limited to bladder cancer, was a substantial factor that increased the risk of harm and of the injuries and damages sustained by Mr. Schwartz which he did, in fact, suffer, and which were reasonably foreseeable as a result of the defendants' negligence and omissions, as set forth above and incorporated herein.

**WHEREFORE**, Plaintiffs seek judgment against the Defendants, both jointly and severally, for damages, together with attorney's fees and costs of suit, and such other and further relief as the court may deem proper.

## VIII.   COUNT IV - CONSORTIUM

87.   Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "86" inclusive, with the same force and effect as if set forth at length herein.

88.   Plaintiff decedent's widow, Barbara Schwartz (hereinafter, "Mrs. Schwartz"), suffered a pecuniary loss of companionship as a direct and proximate result of Plaintiff's decedent's death. Specifically, Plaintiff's decedent provided Mrs. Schwartz with daily care, company and attention.  In addition, Plaintiff's decedent accompanied and provided Mrs. Schwartz with companionship to social and entertainment events.  Furthermore, Plaintiff's decedent performed services in the marital household.  All of the services described above were of great pecuniary value to Mrs. Schwartz.

**WHEREFORE**, Plaintiffs seek judgment against the Defendants, both jointly and severally, for damages, together with attorney's fees and costs of suit, and such other and further relief as the court may deem proper.

## IX.   COUNT V – WRONGFUL DEATH

89.   Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "88" inclusive, with the same force and effect as if set forth at length herein.

90.   On June 12, 2012, plaintiff Mrs. Schwartz was granted Letters Testamentary with Limitations by the Surrogate's Court of the County of Suffolk, New York.  A copy of plaintiff Mrs. Schwartz's Letters Testamentary with Limitations is attached as **Exhibit 'K'**, and is incorporated into this complaint by reference.

91.   As a direct and proximate result of Defendants' negligence, Mr. Schwartz's body was severely injured, and as a further direct and proximate result of Defendants' negligence, Mr. Schwartz died.

92.     Plaintiff decedent Mr. Schwartz is survived by Mrs. Schwartz, Plaintiff's decedent's spouse, who is entitled to take Plaintiff decedent's intestate personal property, and who has suffered pecuniary injury, including the loss of Plaintiff's decedent's support, as a direct and proximate result of Plaintiff's decedent's death.

93.     Plaintiff's decedent's death occurred on September 8, 2011.  This action was commenced on a date within two years of Plaintiff's decedent's death.

94.     Plaintiff Mrs. Schwartz, as Plaintiff's decedent's surviving spouse, is entitled to recover damages as Plaintiff's decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled herein, pursuant to N.J.S.A. 2A:15-3.

95.     Plaintiff Mrs. Schwartz is entitled to recover punitive damages and damages for the pain and suffering caused to Plaintiff's decedent Mr. Schwartz from the acts and omissions of the Defendants as specifically pled herein, including, without limitation, punitive damages pursuant to N.J.S.A. 2A:15-3.

        **WHEREFORE**, Plaintiffs seek judgment on this count against the Defendants, both jointly and severally, and, in the alternative, for the damages resulting from the death of Plaintiff's decedent, including, without limitation, Plaintiff's decedent's pecuniary injury, together with all hospital, medical and funeral expenses as specifically provided for under the New Jersey Wrongful Death Act, N.J.S.A. 31-1 et seq., as well as compensatory damages, exemplary damages, attorney's fees, interest and costs of suit, including, without limitation, punitive damages as provided for under the New Jersey Survivor's Act, N.J.S.A. 2A:15-3 et seq., an all such other relief as the court may deem proper.

## X.     COUNT VI – SURVIVAL ACTION

96.     Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "95" inclusive, with the same force and effect as if set forth at length herein.

97.     As a result of the actions and inactions of the Defendants, Plaintiff decedent Mr. Schwartz was caused to suffer before his death.

98.     Plaintiff Mrs. Schwartz, on behalf of Plaintiff decedent's estate, seeks damages compensable under the Survival Act, N.J.S.A. 2A:14-5 (or any successor statute) against the

Defendants.  Plaintiff Mrs. Schwartz, in her own right, seeks damages compensable under the Survival Act, N.J.S.A. 2A:15-3 (or any successor statute) against the Defendants.

**WHEREFORE,** Plaintiffs seek judgment against the Defendants, both jointly and severally, for compensatory damages and punitive damages, together with interest, costs of suit and attorney's fees and such other relief as the court may deem proper.

## XI.    COUNT VII – MEDICAL MALPRACTICE – FAILURE TO MAKE PROPER EXAMINATION

99.    Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "98" inclusive, with the same force and effect as if set forth at length herein.

100.    Defendants did not have or exercise the degree of skill, care and knowledge ordinarily exercised or possessed by physicians and emergency medical staff in Morris County, New Jersey, or in similar localities, and was guilty of negligence in failing to properly examine Plaintiff's decedent Mr. Schwartz so that Defendants could properly diagnose Plaintiff's decedent's condition.

**WHEREFORE,** Plaintiffs seek judgment against the Defendants, both jointly and severally, for compensatory damages and punitive damages, together with interest, costs of suit and attorney's fees and such other relief as the court may deem proper.

## XII.    COUNT VIII – MEDICAL MALPRACTICE – FAILURE TO USE PROPER DIAGNOSTIC PROCEDURES

101.    Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "100" inclusive, with the same force and effect as if set forth at length herein.

102.    At that time and place, Defendants negligently failed to use the skill and diligence in making a diagnosis ordinarily used by physicians and emergency medical staff of ordinary skill and learning in practice in Morris County, New Jersey, or similar localities, in that defendants

failed to take repeat radiographic studies, perform cystoscopies, and perform biopsies in spite of the nature of Plaintiff decedent's complaints, signs and symptoms.

**WHEREFORE**, Plaintiffs seek judgment against the Defendants, both jointly and severally, for compensatory damages and punitive damages, together with interest, costs of suit and attorney's fees and such other relief as the court may deem proper.

## XIII.   COUNT IX – NEGLIGENT SUPERVISION

103.   Plaintiffs repeat and re-allege each and every allegation in paragraphs "1" through "102" inclusive, with the same force and effect as if set forth at length herein.

104.   Defendant Dr. Kuo, at all times herein mentioned, was employed by defendant AHS Hospital.

105.   Defendant Dr. Kuo, at all times herein mentioned, was negligent and careless and known to be so by defendant AHS Hospital who, regardless of that knowledge hired defendant Dr. Kuo and failed to properly credential, train and supervise this defendant.

106.   At all times herein mentioned, Mr. Schwartz was a patient of defendant AHS Hospital.

107.   Defendant Dr. Chevinsky, at all times herein mentioned, was employed by defendant Allied Surgical Group.

108.   Defendant Dr. Chevinsky, at all times herein mentioned, was negligent and careless and known to be so by defendant Allied Surgical Group who, regardless of that knowledge hired defendant Dr. Chevinsky and failed to properly credential, train and supervise this defendant.

109.   At all times herein mentioned, Mr. Schwartz was a patient of defendant Allied Surgical Group.

110.   Defendants Dr. Atlas, at all times herein mentioned, was employed by defendant Garden State Urology.

111. Defendant Dr. Atlas, at all times herein mentioned, was negligent and careless and known to be so by defendant Garden State Urology who, regardless of that knowledge hired defendant Dr. Atlas and failed to properly credential, train and supervise this defendant.

112. At all times herein mentioned, Mr. Schwartz was a patient of defendant Garden State Urology.

113. From August 13, 2010 through May 2011, Mr. Schwartz presented to AHS Hospital, Allied Surgical Care, and Garden State Urology where defendants Dr. Kuo, Dr. Chevinsky, and Dr. Atlas caused him to sustain severe injuries due to their negligence, omissions and the reasonably foreseeable results of the same including high grade metastatic urothelial cancer with metastases to the liver, lymph nodes and bone and related complications.

114. Mr. Schwartz's injuries and damages were a direct and proximate result of the negligence and omissions of the Defendants in the following particulars, without which the injuries Mr. Schwartz suffered, including wrongful death, would not have occurred:

(a) In hiring defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas without proper investigation into their credentials, practices and training when defendants AHS Hospital, Allied Surgical Care and Garden State Urology knew or should have known that defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas were negligent and careless persons who did not have the skill requisite to a physician practicing in their respective specialty areas;

(b) In permitting defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas to provide care and treatment to the public, and more specifically to Mr. Schwartz, when defendants AHS Hospital, Allied Surgical Care and Garden State Urology knew or should have known that the likely result would be injury to Mr. Schwartz;

(c) In continuing to employ defendants Dr. Kuo, Dr. Chevinsky and Dr. Atlas after having notice of defendants' Dr. Kuo's, Dr. Chevinsky's and Dr. Atlas's negligence, lack of skill and training, carelessness and failure to properly appreciate the complaints and physical signs and symptoms suffered and complained of by their patients.

WHEREFORE, Plaintiffs seek judgment against the Defendants, both jointly and severally, for compensatory damages and punitive damages, together with interest, costs of suit and attorney's fees and such other relief as the court may deem proper.

Dated: December 11, 2013

NAPOLI BERN RIPKA SHKOLNIK, LLP

By: _Vincent L. Gonzalez_

Vincent L. Gonzalez (VLG 4785)
Attorney for Plaintiffs

## JURY DEMAND

The Plaintiffs demand trial by a jury on all of the triable issues of this complaint, pursuant to FRCP R.38.


Dated: December 11, 2013

NAPOLI BERN RIPKA SHKOLNIK, LLP


By: _Vincent L. Gonzalez_

Vincent L. Gonzalez, (VLG 4785)
Attorney for Plaintiffs